Conde B. Pallen, Appellant, v. Corinne Bogy et al., Respondents.

St. Louis Court of Appeals, January 10, 1899.

1. Replevin: POSSESSORY ACTION. The action of replevin is a possessory action, and bare possession of the property in dispute is sufficient to enable the party enjoying it to maintain the action. In the case at bar the plaintiff was a bailee of the property, holding possession for the rightful owner.

2. Factor's Lien: CONTRACT. In the case at bar it was incumbent on defendants to prove that the work and labor was done and the care bestowed on the property under a contract express or implied

with the owner that he should render compensation therefor, and to preserve the lien it was necessary to show that they had not voluntarily parted with the possession of the goods.

3. Bailee: ELECTION TO DISCHARGE LIEN AND RETAIN POSSESSION. When plaintiff became bailee by consent of the general owner, he as such bailee had the right to have the lien established and the value of the lien ascertained, and if he so elected at his risk to discharge the lien and retain possession of the property as the bailee of the owner and to look to the owner for reimbursement.

4. Practice, Trial: INSTRUCTION. In the case at bar the jury were instructed if they found for defendants to find the value of the portraits. Held, that this instruction was erroneous because it was the duty of the court and jury, under the pleadings, to find, not the value of the portraits, but the value of defendant's lien (if any).

*Appeal from the St. Louis City Circuit Court.*—HON. JACOB KLEIN, Judge.

REVERSED AND REMANDED.

JOHN M. DICKSON for appellant.

A claim that A. is indebted to B. for work and labor on personal property by contract, express or implied, does not comport with the assertion of a lien on the same property, based upon an indebtedness of C. to B. The permission granted by the circuit court to defendants to file a counterclaim different from that filed before the justice was error, and in contravention of the statute. R. S. 1889, secs. 6345, 6346. If by the amendment, defendants virtually abandon their claim against plaintiff and are to be held as making an election between inconsistent defenses, such election after the jury is sworn in the circuit court, and after a trial before the justice and an appeal from judgment there, is conclusive evidence of the abandonment of any claim of lien based upon any contract with Mr. Benoist at the time of the trial before said justice. Nelson v. Brodback, 44 Mo. 596; McAdow v. Ross, 53 Mo. 199-203. The fact that they sued plaintiff claiming he owed the amount on the pictures, is conclusive that the defendants did not when the trial in the circuit court began or before, claim any lien on account

of the indebtedness of Benoist.    Smith's Mercantile Law.
A common law lien is a right to hold only; not to sell or
pledge.    It must be asserted when the property is claimed
from them.    It may be abandoned or lost.    Defendants had
no lien.    And if they had, they did not assert it when they
should; they waived and abandoned it.    Smith, Mer. Law,
648, 653; Jones on Liens, secs. 3, 10; Cody v. Vaughn, 53
Mo. App. 174.    Defendants made no claim of ownership,
and based their right to take the pictures on the ground that
they had a lien, and had themselves put them in the care
of his mother to hold for them, and that he held in place
of his mother as their custodian; that this lien was based
upon the agreement with their father.    Because they had
been authorized by their father to take the pictures from
Mr. Pallen for the purpose of selling them and applying the
proceeds to the payment of a debt upon which he and they
were liable.    As they claimed no ownership the burden was
upon them to prove their lien and its continuance; or their
right under their father.    Springfield Grocer Co. v. Shack-
leford, 56 Mo. App. 645; Anderson v. Gouldberg, 53 N. W.
Rep. 636; Armory v. Delamirie, 1 Strange, 565. Plaintiff
rested on his actual possession as *prima facie* evidence of
his right; and in rebuttal, showed his interest in the por-
traits, and his right to possession against the whole world,
save the persons named in the document of title and also
rested his right upon the assent of Mr. Benoist and the
others referred to in the document.    Cases cited under
subdivision 6, this brief; as to life interests, remainders,
etc.; in personal property, see Brantley on Personal Prop-
erty, chapter 10, page 179.  The instruction criticised did not
take into account the relation between Mr. Benoist and
defendants; nor the age of defendants.    In an action by a
child against its parent for work and labor, the presumption
is that the services were gratuitous and the burden is upon
the child to show that they were not.    Castle v. Edwards,

63 Mo. App. 567, and cases cited therein; Pearl v. Roberts, 1 Mo. App. 232; Lowder v. Hart, 52 Mo. App. 377.

L. FRANK OTTOFY for respondents.

The formal answer filed in the circuit court does not set up a new counterclaim at all and is therefore no departure from the claim asserted before the justice. It is simply a statement of their defense and the defendants could have it set up under the general issue. And if plaintiff was surprised thereby he should have filed his affidavit as required by the statute. Indeed the defendant may offer any defense on a trial *de novo* in the circuit court, whether made before the justice or not. Comfort v. Lynam, 67 Mo. App. 668, 670, and cases cited. The defendant's lien for work and labor done was an existing lien at the time of the seizure and they are therefore entitled to the possession until their special interest in the property is satisfied. Gentry v. Templeton, 47 Mo. App. 55, 60; Campbell P. P. & Mfg. Co. v. Roeder, 44 Mo. App. 324, 329; Peters v. Loewenstein, 44 Mo. App. 406, 410. The defendants were entitled to the possession at the time of the seizure under the express authority of the owner of the property and the plaintiff being a stranger has no paramount right. Plaintiff's title being denied, naked possession is not sufficient to sustain the action and he must prove property general or special in the portraits and the *onus* is upon him to prove it. Plaintiff proved neither. Scott v. Riley, 49 Mo. App. 251, 253, and cases there cited; Andrews v. Costican, 30 Mo. App. 29, 33 and cases cited. The presumption that services rendered by a child to a parent gratuitious can not be invoked here: First, because the defendants were not "members of S. H. Benoist's family" but on the contrary they were living with their grandmother, or he was boarding with defendants; second, because the first labor done upon the portraits was after Mrs. Bogy passed her majority; third, because he is

shown to have requested them to do what was necessary for their care, restoration and preservation. It is not necessary to show an express contract in the sense of a direct promise to pay; an impled contract will suffice. Penter v. Roberts, 51 Mo. App. 222, 227; Ronsiek v. Boverschmidt's Adm'r, 63 Mo. App. 421, 423; Woods v. Land, 30 Mo. App. 176, 181; Ramsey v. Hicks, 53 Mo. App. 190, 195. Whether services were intended as a gratuity was a question for the jury. Kerr v. Cusenbary, 60 Mo. App. 558, 563. The defendants were competent witnesses to prove the arrangement between them and Mrs. Pallen, deceased, as to the custody of the portraits, because that was not the contract or cause of action in issue and on trial. Gunn v. Thurston, 130 Mo. 339, 343; Ashbrook v. Letcher, 41 Mo. App. 374; R. S. 1889, sec. 8918. The rule that the special interest of defendants in the property should be assessed applies only where plaintiff is the general owner of the property, the plaintiff is not an owner in any sense, but a stranger to the title and therefore the full value should be assessed. Gentry v. Templeton, 47 Mo. App. 55, 60, and cases cited; Dilworth v. McKelvy, 30 Mo. 149, 154; Fellon v. Manning, 35 Mo. 271, 275; Nelson v. Luchtemeyer, 49 Mo. 56, 59; Pierce v. Lowder, 54 Mo. App. 25, 28; Coggshall v. Munger, 54 Mo. App. 420, 424.

BLAND, P. J.—The action is replevin for the recovery of a number of oil portraits of the alleged value of $500, begun before a justice of the peace. The defendant in the justice's court filed the following amended counterclaim:

"St. Louis, February 23, 1898.

"Conde B. Pallen, to Corinne Bogy, wife of Lewis Bogy, and Eugene Benoist, Dr.

"To care and preservation of portraits of, etc.,
    being the portraits levied on in this action,
    services rendered from 1876 to 1896, in re-
    pairing the same and caring therefor......$500.00."

In the circuit court, to which the cause was appealed, the defendant, over the objection of plaintiff, filed the following amended counterclaim and answer:

"Conde B. Pallen, Plaintiff,          No. 10007.
                v.                    Room 1.
"Corinne Bogy, wife of Lewis          In the circuit court,
"Bogy and Eugene Benoist,             City of St. Louis, Mo.
        Defendants.                   June Term, 1898.

"And now come the defendants and for their answer to plaintiff's statement or petition herein and by way of a counterclaim state that about the year 1876 the owner of the property described in the said statement or petition intrusted the same into the care of defendants and that they undertook the care and preservation of said pictures and continued to render valuable services thereto in their care and preservation and in repairs thereon; that defendants have and still claim a lien upon the said pictures for such care and preservation which they have never waived or abandoned and that such lien existed at the time the same were taken under the writ of replevin herein and that the services rendered by them were continuously rendered from the year 1876 until the year 1896, at which time defendants intrusted the care of said pictures to one Eliza B. Pallen, deceased, who held the same for them up to the time of her death and that the services which defendants rendered upon and to said pictures were of the reasonable value of five hundred dollars, for which sum they assert a lien against them and pray for possession of said pictures until said lien is satisfied and discharged.

"And for another and further defense defendants state that the plaintiff herein has no title whatever to the property, to wit, the seven pictures described in the statement or petition herein; that their father one S. H. Benoist is the lawful owner thereof and that on the 26th day of January, 1898, and at other times the said S. H. Benoist

authorized and empowered the defendants to take possession of said pictures and authorized and directed them to effect a sale thereof and apply the proceeds of such sale to the satisfaction of a debt then existing between them and to apply the proceeds also to the payment and satisfaction of certain debts then existing upon defendants' property which said S. H. Benoist had incurred while he was their trustee, and the defendants therefore state that they are entitled to the possession of said pictures or their value, to wit, the sum of three thousand dollars, and pray for judgment and costs."

On trial *de novo* in the circuit court the jury found the issues for the defendants, that they were entitled to the possession of the portraits and assessed their value at $450. A judgment was rendered for defendants on the verdict as found by the jury, from which, after an unavailing motion for new trial, the plaintiff appealed.

S. H. Benoist, the father of the defendants, is and was for many years prior to the commencement of the suit, the owner of the portraits. S. H. Benoist is the brother of Eliza B. Pallen, mother of the plaintiff. Mrs. Pallen was at one time the owner of the portraits. In 1877, Eliza B. Pallen, Conde L. Benoist and S. H. Benoist, executed a written agreement, the object and purpose of which was to transfer the portraits to S. H. Benoist, and to continue their possession in the Benoist family so long as there should be male issue of that family qualified under the agreement to take possession, but on failure of such issue the portraits were to be returned to Mrs. E. B. Pallen or her eldest son. The portraits when received by S. H. Benoist under the agreement were about two hundred years old, and were in a damaged condition, so much so that they needed the care and skill of an artist to restore and preserve them. Mrs. Bogy, then a girl of about seventeen years of age, possessed artistic talent and skill, and her father, with a view of hav-

ing the portraits restored and properly cared for, placed them in her possession, who then resided and thereafter continued to reside with her grandmother as a member of her family. Mrs. Bogy testified that she took the portraits, covered them with cloth, and hung them up, and then made a special study of the restoration of ancient paintings, and that after two years study she began the work of restoration, and did restore them; that the work required great care and skill, and that the care of them after restoration required exceeding care on account of the brittleness of the canvas. She further testified that she and her sister (her codefendant) had taken care of the portraits continuously from the time they were delivered to her by her father, until 1896, when she took them to the residence of Mrs. E. B. Pallen and placed them with her, with the request that she (Mrs. Pallen) keep them for her until she should call for them. The portraits were hung on the walls of the parlor of Mrs. Pallen's residence, where they remained until taken down and recovered by the defendants. On May 9, 1897, Mrs. Pallen died; her son, the plaintiff, after the death of his mother, continued in the possession and occupation of his mother's residence. About January 28, 1898, S. H. Benoist and his daughter Eugenie Benoist took dinner with plaintiff at his residence. At this meeting there was a discussion of negotiation which had been previously inaugurated looking to a sale of the portraits and other family property. To complete these negotiations it was thought necessary to have the assent of Conde Benoist and the plaintiff was dispatched to the residence of Conde Benoist in another part of the city for the purpose of seeing him about the proposed sale. Plaintiff had some difficulty in finding Conde Benoist, and was absent on this mission for several hours. Mr. S. H. Benoist also left the house of the plaintiff. After the departure of Pallen and S. H. Benoist, Miss Eugenie Benoist returned to her home (the home of Mrs. Bogy),

when she and Mrs. Bogy, procured a surrey, drove to the residence of the plaintiff, and in his absence and without his knowedge or consent took the portraits from their places on the walls of his residence and removed them to the residence of Mrs. Bogy, and refused thereafter to surrender their possession to plaintiff.   There is no evidence of an express agreement between S. H. Benoist and Mrs. Bogy, that Mrs. Bogy should be compensated for her services in restoring and caring for the portraits, and there is no such agreement, unless the law will imply one from the facts; there was some evidence both ways on this issue fairly raised by the pleadings, but as the jury were not instructed on this issue and made no finding concerning it, it will not be discussed in this opinion, except as its discussion incidentally occurs in the discussion of other questions in the case.

I.   The first count in defendants' amended answer and counterclaim, filed in the circuit court, is but an elaboration of the amended account filed before the justice of the peace, and contains no averment which is not embraced or intended to be included in the amended account filed before the justice; the amendment is clearly permissible under section 6347, Revised Statutes 1889.   The second count of the answer, however, introduced an entirely new defense, the defense of a special bailment to defendants with power to sell the portraits and apply the proceeds to the payment of debts due to them from their father and to discharge liens he had created on their property when acting as their trustee.   This new defense is expressly prohibited by section 6346, Revised Statutes 1889, and should have been stricken out.

II.   The right of plaintiff to sue for the recovery of the property is called in question.   His possession of the portraits was not equivocal.   He came into of them fortuitously; his possession was not wrongful, and he was a bailee of the property, holding possession for the righful owner,

with his full knowledge and consent. Lawson on Bailment, chapter 2, section 15, and it was his right to defend that possession against all persons interfering with it other than the rightful owner. Lawson on Bailment, chap. 3, sec. 15; Story on Bailment [9 Ed.], 93; 2 Blackstone Com. 542; Cobbey on Replevin, secs. 133, 423. The action of replevin is a possessory action, and it has long since been the settled law that bare possession of the property in dispute is sufficient title to enable the party enjoying it to maintain the action. Weeks v. Etter, 81 Mo. 375; Smith v. Lydick, 42 Mo. 209; Summons v. Austin, 36 Mo. 307; Springfield Grocer Co. v. Shackleford, 56 Mo. App. 642; Anderson v. Goulding, 53 N. W. Rep. 636; Odd Fellows Hall Ass'n v. McAlister, 11 L. R. A. 172.

III. The defendants obtained possession of the portraits by trespass. The action, however, is not in trespass *de bonis asportatis,* but for the restitution of the specific goods. This the plaintiff should have, unless the defendants have shown a superior right to their possession. The right upon which they relied is a factors lien for work, labor and care bestowed upon the portraits extending over a period of years, at the special instance and request of the owner. To substantiate this defense it was incumbent on defendants to prove that the work and labor was done and the care bestowed on the portraits under a contract express or implied with the owner that he should render compensation therefor, and to preserve the lien it was necessary to show that they they had not voluntarily parted with the possession of the goods. Mrs. Bogy's testimony tended to show that the portraits were by her delivered to Mrs. Pallen to be temporarily kept for her (Mrs. Bogy). In such circumstances the lien of Mrs. Bogy (if any) on the portraits was not lost, for the possession of Mrs. Pallen was the possession of Mrs. Bogy; nor would the death of Mrs. Pallen while so in possession and the fortuitous possession of the portraits by the plaintiff

by reason of the death of his mother destroy or impair the lien of Mrs. Bogy or her right of possession for the purpose of preserving and enforcing her lien; but when the plaintiff became bailee by consent of the general owner (S. H. Benoist) he as such bailee had the right to have the lien established and the value of the lien ascertained. This has long been the settled law in this state. Kerr v. Drew, 90 Mo. 147; Daugherty v. Cooper, 77 Mo. 528; Lewis v. Mason, 94 Mo. 551; Jones v. Evans, 62 Mo. 350; Dilworth v. Mc-Kelvy, 30 Mo. 149; Heaps v. Jones, 23 Mo. App. 617; Hickman v. Dill, 32 Mo. App. 509; Campell Print. Press Co. v. Roeder, 44 Mo. App. 324. The plaintiff had the right, if he so elected, at his risk to discharge the lien and retain possession of the property as the bailee of the owner, and to look to the owner for reimbursement; or the owner who was a witness for plaintiff and friendly to plaintiff's side of the cause, would have the undoubted right to furnish his bailee with the funds necessary to discharge the lien and thus enable him to retain the possession of the portraits as his bailee and subject to his orders.

IV. The portraits were taken out of the defendants' possession by the constable and delivered to plaintiff, who retained possession. On the trial the jury were instructed, if they found for defendants to find the value of the portraits. This they did, and the court rendered judgment on the verdict to the effect that defendants recover the specific property or its assessed value, $450 at their election. This judgment is erroneous and unjust. It is erroneous because it was the duty of the court and jury under the pleadings to find not the value of the portraits, but the value of defendants lien (if any). See authorities cited in the third paragraph of this opinion. It is also erroneous because not authorized by either section 7489 of the practice act, or section 6186, concerning replevin in justice courts. The latter section requires the jury to find the value of defend-

ants' possession, and under the former there can be no recovery of the value of the property, unless the defendant "in his answer claims the same and demands a return thereof" (to use the language of the statute) no such claim is made by the answer. Young v. Glascock, 79 Mo. 574; Fowler v. Carr, 55 Mo. App. 145; Balch v. Myers, 65 Mo. App. 422; Chemical Co. v. Nickells, 66 Mo. App. 678. It is unjust because the defendants have recovered the full value of the property in a suit which they expressly alleged ownership in a third party, and also without first establishing by the verdict of a jury that they have any lien or one cent's worth of interest in the property, wherefore the judgment is reversed and the cause remanded. Judge Bond concurs; Judge Biggs dissents.